Two cases and then we're going to take a break this morning before the last case will be heard just to clear the courtroom. We will begin with United States v. Wilhite 17-1434. Judge McKay, Judge Kelly, and Presiding Judge Holmes, may it please the court, welcome to the clerk's court personnel and to learned opposing counsel. In my experience in oral argument, I have often left what I think are some of the simplest and most dispositive issues to the end only to be surprised from questions by the bench that suggest I misapprehended the court's concern about the arguments and I've left sadder but wiser. So in this case I want to start with three points that I believe are relatively clear that involve undisputed facts and I think in a large measure will govern what if this court remands the case should happen on remand. The first I think is relatively simple and that is that the foreclosure statute 26 U.S.C. 7403 subsection B says that in any kind of foreclosure of an interest to satisfy a judgment in favor of the United States, all lien holders must be joined. In fact, Kubota is a lien holder of AFC, the court found that it's a lien holder of AFC and the court declined to join Kubota as a party notwithstanding the mandatory language of 7403B. The court's explanation was that it believed that the United States lien was superior. But 7403 isn't simply directed to the superiority of a lien, it ensures that in a forced sale of property, anybody who has an interest in the property can appear and make sure that their interests are protected when there's an ultimate sale. As a consequence, regardless of whether Kubota is senior or junior, if there's a forced sale of the property and they have a lien on that property, they are entitled as a matter of law to be involved in the proceedings and the district court erred in going through a foreclosure proceeding without having joined the statutorily necessary party. Secondly, the FDCPA, which is at issue in this case, says that the United States can go after co-owned property only to the extent permitted under state law. The state law in this case is Colorado and the interest that the district court found was co-owned was an interest, a legal interest, in a limited liability company that legally was held solely and exclusively by Dee Wilhite, my client. The fact that she was the legal owner wasn't dispositive, of course. The rest of this case is about whether or not Mr. Wilhite had an equitable interest in that single membership. But there is no dispute, we think, that what the court ultimately decided is that the limited liability company is co-owned by Mr. Wilhite, who is the debtor, and by Dee Wilhite, who is not a debtor. And because of her interest in the limited liability company, under section 3203A of the FDCPA, any attachment can only reach the interest permitted under state law, not federal law, but under state law. Under Colorado law, we believe it's undisputed that a creditor of a member of a limited liability company cannot force the sale of the limited liability company and apportionment of proceeds of the sale to satisfy the debt. The only thing that a creditor of a member of a limited liability company in Colorado can do to satisfy its debt is to obtain a charging order against the limited liability company that effectively makes the creditor an entity that has a right to receive any economic benefits that the member holder otherwise would have received. The third, and this may be the most important point that I think is relatively undisputed, and perhaps has the most effect on this proceeding, is that the trial court apportioned an imputed interest of 73.9% to Mr. Wilhite on the basis of testimony from an expert who made an assumption that was key, and was demonstrably unsupported by the evidence. The expert opined that in order to come up with some assessment of the valuation that Mr. Wilhite held versus the valuation that Mrs. Wilhite held, among the other considerations, and in this case the most important, was imputed salary on the basis of the positions that each of them held. The expert attributed to Mr. Wilhite the position of Chief Executive Officer, and to Mrs. Wilhite the position of Chief Financial Officer. The expert then looked at comparable company data around the country to come up with a hypothetical company to see what a hypothetical CEO at this hypothetical company would have earned versus what a CFO would have earned, and then in essence said, on the basis of this, this is how I would apportion salary contributions to keep the LLC going. The actual cash contributions as one element is a different matter, but just looking at the salary assumptions, the expert overtly and demonstrably testified that he assumed that Mr. Wilhite was working full time after 2008 through the time of his testimony. Now frankly, all the flashy rhetoric that I might have, all the investigation that you might make into the record to try to determine whether or not that was a fair assumption is obviated by two undisputed facts. The first undisputed fact is that the district court expressly found that the assumption that the expert was making, that Mr. Wilhite was working full time, was unsupported by the record. We've cited in our briefs a portion of the district court's decision where the district court says, the United States would like me to believe that Mr. Wilhite continued as a full time employee in the role of Chief Executive Officer after 2018. The evidence does not. 2008. 2008, thank you, Your Honor. 2008, and the evidence does not support that conclusion. I was going through the district court orders again last night, and so I'm confused by what you're saying. The district court cited considerable evidence that provided a basis for that assumption that Mr. Wilhite in fact was the CEO of the company, was in fact running the company. I mean, a number of witnesses testified that he was running the company. So I don't see what the basis is for that statement. Even if the word assumption was used, it seemed the record amply supported that assumption. Your Honor, I believe all the evidence that you have recited supports the finding that he was working as a Chief Executive Officer, but there, A, was no quantification of his time at all, and B, the expert witness testified that he assumed that Mr. Wilhite was a full time employee. Well, what does estimation of his time even mean? I mean, if he's a CEO and he's running the company, I mean, he's not clocking in. I mean, he's running the company. That might have been, I didn't mean to cut you off. No, please. That might have been an excellent point for the U.S. Attorney to make. That might have been an excellent point for the expert to say the amount of time he spent was irrelevant. But when specifically questioned about this point, the expert did not say, I did not consider how many hours because it was irrelevant. He did not say, I didn't consider how many hours because his position alone entitled him to that salary. He said, I didn't consider his hours alone because I assumed he was full time. And how many hours did he assume that he worked? Well, he said, I'm not going to assume a number of hours. I'm only going to assume that he worked full time. And that's my point. I mean, the testimony was he ran the company. And so that means you do whatever it takes to run the company. And so if he had estimated 40 hours, that might have been too little. And so he didn't estimate any time. So, I mean, I don't, the point about the district court questioning the government's position, again, I read the order last night. And there seemed to be no doubt that the court believed that Mr. Wilhite was running that company. And therefore, that was a valid assumption. Your Honor, I don't think that the court, as a court, can opine or rely on an opinion that whether the number of hours is full time or not is simply irrelevant because of the position. That's a matter of expert testimony. The valuation expert had the opportunity to say the number of hours is irrelevant. The valuation expert had an opportunity to say whether it was full time or not is irrelevant. He was running the darn company. The valuation expert didn't say that. The point I'm making is he didn't, to your point, if I understood you correctly, he didn't even put a number on it. All he said was he was a full time CEO. And he used that as a basis to seek comparators as to what his salary would have been, right? And based on his testimony, he assumed full time. Okay. And if everybody who's had any contact with Mr. Wilhite said he's the man, he's running the company, then why isn't it fair to make the assumption that the company is running, that he's doing it full time? I mean, where's the gap? The district court specifically found that she could not determine how much he worked. That's the first gap. The district court did not say. What part of the record are you referring to for that? I mean, because I looked at the orders last night and I didn't see anything to that effect. Okay. And while I'm looking for that, Your Honor, the second point I would make is. Okay, I'm sorry. If it's going to take your time, I don't want to eat your time. I'll find it later. I can, it's in my reply brief, Your Honor. And the other point that I wanted to make in that regard is your perception that this was all irrelevant, I don't think is consistent either with the expert or with the judges. But it absolutely isn't consistent with what the U.S. Attorney, the U.S. Attorney's Office itself understood. Because when this objection was brought out overtly and trial counsel for Dee Wilhite and the Yahab Foundation said, Your Honor, there's a clear patent deficiency in the proof. The U.S. Attorney's Office did not say full-time is irrelevant. The U.S. Attorney's Office did not say the inference is still good. The U.S. Attorney's Office said, we got proof. We'll put it together. We're going to give it to you, Your Honor. And I think that is a confession that there was an evidentiary gap in their case. Let me go back to your Cavada thing. Did you raise that specific objection in the district court to the fact that Cavada wasn't joined as a party? I don't have a recollection that that, in fact, did take place. And if it did, where did it take place? Your Honor, that's in our briefs in the recitation of where. I'm sorry. And the court actually ruled on it as well. The court ruled on actually two objections. One objection was that Cavada wasn't joined and the court specifically found in her ruling that Cavada didn't need to be joined because Cavada's lien was inferior. The district court also found expressly that the suggestion that A&B Bank had to be joined was incorrect because A&B Bank was no longer a lien holder. Okay, so you specifically argued that Cavada needed to be joined under 7403B and that the government violated that specific statute by not joining. Yes, and the court ruled against us on it. Okay, tell me where you argued that. Do you want where we argued or where the court ruled on it, Your Honor? Well, I want to know that you raised the argument, but again, if it's going to eat your time, I'll find it. I would like, I'm happy to answer more questions. If there are no more questions, I would like to reserve the rest of my time for rebuttal and I will find those two citations for you, Your Honor, so you don't have to dig through them. Thank you, Counsel. Thank you. May it please the court, Bishop Grewell on behalf of the United States, just to address some of the record questions that you had. First of all, in their appendix 116 to 117 is where Judge Arguello was initially talking about the government asking for an assumption of 40 hours and she says, I don't have that evidence. And then she goes on to say, and I don't really know that hours is the proper measure or whether it should be the type of services that were provided. And so she asks us to then present this evidence about what really should be, how we should determine the cash contributions and the services rendered. That's when the experts come in. Our expert at 405 of their appendix first says, well, full time, but I wasn't really talking more or less hours. And then at page 410, asked again, and he said, well, I don't think I really ever made a determination of full time or part time. I treated it as salaried employment. He was just looking at the CEO role, which the record was replete with evidence suggesting Mr. Will Hite was a CEO during this time period, to use that as a proxy. Are you still contesting jurisdiction on? So on the case number 17, I think it was prematurely filed, but all of the issues that are now raised became final with later issues. So you can either dismiss that 17 as premature, or I guess you could say it ripened and handle it with the other two. So I don't think there's a jurisdictional issue. So the court didn't clearly err then when it relied on our experts' assertion that what a CEO should be paid for this type of job in this particular area is a good proxy for the value that Mr. Will Hite was providing. So when the expert looked at it, Matt, it focused on comparators who looked at the category of CEO in this kind of job. Well, implicit in that isn't it the notion that that CEO would be full time? Yes, but I think when we think of executive roles, I don't think full time equates to particular hours. Well, that seems reasonable to me, and that was a position, as I understand it, you said the district court took. But the point is that was there ever some dispute over the question of whether the expert's calculation was based upon full time and it shouldn't have been based upon full time, it should have been based upon part time? I mean, did that play out? No, the assertion was really this hours part that was discussed beforehand. And then there's some questioning, but when we finally get to the judge's ruling on this, she's saying we're going to use the CEO as proxy. What they argued, their expert's contention, was that what it should actually be based on was Mrs. Will Hite's salary. I know in their brief they try to say that it should be based on this Torren Jackson who was a GM. That was never argued below, and if you look at their sites, that wasn't the case. Their expert said, no, let's look at Mrs. Will Hite's salary, which was a salary that she chose to pay herself, and so the court didn't find that as reliable. It said that's not a good categorization here. We don't have good evidence because of the way that Will Hite ran this business. And so I think the fair market value from this ERI survey and narrowing it down to this type of company in the Castle Rock area was a better way to do it. And that was certainly a reasonable way, and so certainly not a clearly erroneous decision on the district court's part to rely on our expert. Well, counsel, didn't the court initially hold that Mr. Will Hite's membership interests stem from his fraudulent transfer of his income to AFC? I believe that's correct. Then didn't the court later walk back on that finding and without making any further factual findings as to what Mr. Will Hite had transferred to AFC held that he maintained a membership interest? How did it get there? So I think the confusion was what the court walked back on was there was a talk about this alone that was made. And the court was originally attributing some value to that and walked back from that. The value, the way he got the membership interest and the thing, the actual asset that was transferred was his interest in AFC, his membership interest that was transferred with the formation of the company itself. So that's what the court was relying on as being the asset transfer. Well, I guess I'm not following how we convert somebody who's been hired even as a CEO into a membership interest. When the paperwork and everything else, all the corporate formalities were maintained, at least I didn't see that they were contested, and takes a salaried position and converts it into an equity or membership interest in the LLC. It was doing that entirely under the Colorado Uniform Fraudulent Transfers Act. And so it was doing it under the notion that if there's a fraudulent transfer and the Colorado Fraudulent Transfers Act allows you to use equity or any other way once you determine- Well, she took that back. Where's the gap being filled? I'm sorry, she took that back. She originally concluded that the membership interest came from the fraudulent transfer. Okay, then she changed her mind about that, but didn't make any further factual findings as to what asset he had transferred to AFC that converted into a membership interest. I'm not sure where in the record she took that back, that the asset, that his actual interest in AFC had been transferred. Initially, she gave the membership interest in part based off a loan that she said was made and took that part of it back. But I don't think she ever took back the notion that the formation of the business itself, his interest in that company was transferred away just by the formation of the company. And as this court's Holman decision made clear, it doesn't ever have to be in his name in some way for an asset to be transferred away. There's got to be some evidence, though, doesn't there? Yeah, and there's all kinds of evidence here. For instance, he was going to form this exact same company with Mr. Clement and Mr. Russell, and there's agreements in the record where he was going to get a share for that. The appendix, page 45, and supplemental appendix, page 89, he was going to get 20% in that company just for sort of doing marketing and the like. Mr. Russell was going to get 40% for his knowledge for this CLIP system. Now, Mr. Wilhite brings all of that to this particular company. And so the court found he's bringing all of this stuff here, and based on all of the coup de factors, which I can certainly go through, makes a factual finding that this transfer did in fact occur. Yes, there's no paper for it, but that's what you're going to do in many cases where you're trying to perpetrate a fraud. You're not going to create a paper trail for it. And so the court found you just never created this interest on paper because you were fraudulently transferring that interest away. I think the court didn't clearly err in making that finding. When you look at the various coup de factors, what it said was, look, the problem it actually had with the magistrate's ruling is there was a little bit of a scoreboard approach there, and the court, I think, properly said this is a totality of the circumstances. Well, the magistrate concluded just the contrary, right? Right, and I think what the district court said the magistrate did wrong there basically was took this scoreboard approach and looked at those factors too much like, well, does this fact fit right in that case? Does that factor? But under CUFTA, those factors aren't exclusive and they're not dispositive. What they're all really trying to get at is this question of whether or not the transfer was made with the actual intent to hinder, delay, or defraud. And so you look at the totality of the circumstances, and so that's what the district court then did. And when she looked at the totality, the fact that the transfer was to an insider, his wife, the fact that he remained in control of the company from day one, he was the GM and the CEO, the fact that he provided the knowledge and the sweat equity, the fact that he concealed the transfer, that he was under the threat of the tax lien, that he transferred all of his assets, that he was insolvent, that he had a motive to hide them, that he even said that putting AFC in his name would jeopardize the family assets, appendix page 98, that his wife in the Christmas letters saying it's his company, all of these factors were facts that let the court make that inference, make that conclusion that this transfer had occurred and that it actually occurred with the intent to defraud. Help me with the Cabada issue regarding possible preservation. I mean, is it in fact the case that they raised in the district court, the specific objection, that Cabada was not joined as a party and therefore there was a violation under 7403B? I'm not sure it was articulated in those exact terms. The Cabada was certainly a known issue and the way the court dealt with it, it was we provided notice to Cabada that this proceeding is going on and if you want to come in and get involved, come in and get involved and Cabada never came along and got involved. And so the court said we don't need to worry about that lien because Cabada hasn't come in and contested or suggested that their lien is somehow superior. They also raised, there was another bank that they were also claiming had a lien and the court looked to the Secretary of State's website and found that there was no lien recorded and so it dealt with that lien as well. Let me ask you about the YAHEB funds and specifically the question I have is, there had been a determination that I think 74.2% or something like that was the percentage that Mr. Wilhite had in the $200,000 that was transferred. Then we end up with roughly $14,000 in the account. And the government gets it all. Why should that be the case when he only had an interest in 74.2%? Why shouldn't the rest of the money have gone to Mrs. Wilhite? So he had an interest in 74% of the $200,000 that was transferred. So that's $144,000 or so that we have an interest in. She has never claimed that she wants her funds back from YAHEB and if she did, YAHEB, who's also a party, might have a different view of that. If those funds were to go be credited to her, there's going to be a larger judgment still outstanding against YAHEB then. But this is basically what happens here is we get to get $144,000 from YAHEB and we can get that from anything that YAHEB has, whether it's a contribution she made or whether it was from another donor. It's just like if anybody else gives something to a 501c3, they're at risk that if that 501c3 gets some sort of judgment against it, that any of those assets could come out of that. And so she has no interest at all in that $14,000 or anything else that YAHEB has. She said below, I have no interest in what YAHEB has. It's only YAHEB who has that interest and we have $144,000 interest against YAHEB. So there's no reason that she should have any claim on that $14,000. Okay, so to be clear, you're saying that she disclaimed any interest in whatever was in that bank account. She said below that she has no interest in YAHEB. They have made the argument trying to say that somehow 23% should be held back, but that would be held back for YAHEB and there's no basis for YAHEB having this 70-20% breakdown. They're not in AFC themselves. All they have an interest in is $200,000 that was contributed to them and the $144,000 of that we have an interest in getting and we can get $144,000 back from whatever means that YAHEB has. Okay, well I understand the part that says it's YAHEB's interest. The point I'm making is there is no distinction in which she is saying that I still have a discreet interest in what is in that bank account. She testified below that she has no interest in YAHEB, so I don't know how she could have an interest in YAHEB's bank account. Okay, well, okay, so she has no interest. Well, she says she has no interest in YAHEB. Therefore, there is an execution as it relates to that bank account. You have $144,000 that you're owed out of that bank account essentially and so the only amount of money in there, $14,000, you're saying that was yours? Yes, yes, and YAHEB is the only one who can contest that and they can only contest against sort of our ability to come to them for $144,000. All right. I want to back up just a little. When you say they let the one owner know about the proceeding, are you arguing that that satisfies the statutory requirement of joining the other parties of interest? So I believe, I'm not sure join is the… Because the word join, at least the way it was read, it says join. And was the action you took in notifying, is it your position that all you had to do was notify them rather than to actually name and serve them? I can't remember the exact language in the statute. I don't believe the statute itself says join. Maybe it does. I think it's more language about trying to give that party a chance to… that that party should be able to defend their interest if they want to, that they should be able to have a chance to defend their interest. They had that chance by us giving them notice. So we believe that the notice here that was given to Kubota was adequate to satisfy 7403B. So in your position, join simply is satisfied by notice rather than by formal service. I'm not sure that the statute uses that language. If it did, if you look at the context of the rest of the statute there under 7403, I think all the statute is saying is we give that interest an opportunity to defend it. We're not going to force that interest to come into court if it doesn't want to come into court to defend what it may consider to be a small lien and not worth the legal fees to defend that particular interest. It says shall be made parties thereto. And so they were certainly provided notice. I'm not sure what naming them as parties would have done in any different manner. To the extent that that would be required, I think it would simply be harmless here then because there's nothing suggesting that naming them, I think, would have changed anything. They were certainly aware of their interest and could have tried to claim it was superior if they wanted to. Moreover, I think that even had they been named, it wouldn't have changed the result again because we had the superior interest here based on the fact that our interest accrued right when the company was formed at the very start before Kubota provided their interest. Where would I look for in the record Ms. Wilhite's disclaimer of an interest in Yaha? I have it right here. Right here. It's in her testimony, which I believe occurs. It's near the end of their appendix. I can file a 28-J just giving you that cite. Okay. It's in her testimony. What proceeding? I'll find it. Yeah. She testified. It's definitely in their appendix near the end. She was testifying. I think it was actually as part of the hearing where the experts were testifying as well to try and show interest. Okay. And I'll find it. Thank you. Thank you, Your Honors. We would ask you to affirm. Judge Holmes, I looked at the record. The court's ruling regarding the Kubota issue is set out at record 225. However, the court ruled on a priority issue and your question was preservation of the argument under 7403. There's no reference in the court's ruling on 7403. The place where that was raised would have been in document number 177, which does not appear to have been included in any of the appendices. And so I cannot point to a place where the Wilhites expressly raised 7403 as opposed to raising the issue of the Kubota lien. With regard to the place where the issue was raised about the testimony concerning full time, that's in the supplemental record at 1006-1007, and that's where the U.S. Attorney's Office says we know this is an issue. We're preparing additional evidence and we will present it to you, which bolsters, I think, our argument that it was relevant notwithstanding the U.S. Attorney's characterization. One final point that I want to make is that we think it's important to distinguish between activity as a CEO and activity as an owner. And we don't believe the trial court had a basis to determine that equity was determined merely by service as an officer. I see my time is up, and so if there are any questions, I'm happy to answer them. Thank you, Counsel. Case is submitted. Thank you, Your Honor.